IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AMERICAN PAPER CORPORATION,<br><br>**Plaintiff**,<br><br>v.<br><br>CLEARWATER PAPER CORPORATION,<br><br>**Defendant.** | CIVIL NO. 25-1296 (RAM) |

<u>OPINION AND ORDER</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is defendant Clearwater Paper Corporation's ("Clearwater" or "Defendant") *Motion to Dismiss* ("*Motion*"). (Docket No. 20). Plaintiff American Paper Corporation ("American Paper" or "Plaintiff") alleges Defendant violated Puerto Rico's Sales Representative Act, commonly known as Law 21, when it terminated the parties' sales representative agreement without just cause. (Docket No. 19 at 10-12). Because Plaintiff did not plausibly plead exclusive sales representation status, the *Motion* is **GRANTED**, and this action is **DISMISSED** in its entirety.

I. FACTUAL BACKGROUND[1]

Around 2009, Plaintiff and non-party International Paper ("IP") entered into a verbal agreement whereby Plaintiff would

---

[1] The Court's factual recitation is taken from Plaintiff's allegations in the *Second Amended Complaint*, the content of which must be accepted as true at this stage of the proceedings. *See* <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012).

provide sales representation over the sale of IP's solid bleached sulfate ("SBS") folding carton product in Puerto Rico. (Docket No. 19 ¶ 8). Pursuant to that agreement, Plaintiff introduced and developed the market for Defendant's SBS products in Puerto Rico by identifying and procuring clients for it, assisting in pricing negotiations, channeling purchase orders, providing weekly shipping schedules, and assisting with product samples and product claims. Id. ¶ 12.

On or around 2011, IP and American Paper modified their verbal agreement to establish that American Paper would continue providing exclusive sales representation over IP's SBS pharmaceutical grade folding carton. Id. ¶ 21. Under the agreement, American Paper received a two percent (2%) commission for each sale of SBS to MM Packaging, a non-party client that holds over sixty percent (60%) of the Puerto Rico SBS pharmaceutical grade packaging market. Id. ¶ 25, 29. During the relationship between American Paper and IP, no other party had sales representation rights over IP's SBS products sold to MM Packaging in Puerto Rico. Id. ¶ 32.

In January 2018, IP combined its North America consumer packaging business with Graphic Packaging Holding Company, forming Graphic Packaging International Partners, LLC ("GPI"). Id. ¶ 34. GPI, through its Augusta, Georgia, manufacturing facility

("Augusta Mill") continued to work with American Paper for the sale of SBS to MM Packaging in Puerto Rico. Id. ¶ 36.

On or around May 2024, Clearwater acquired the Augusta Mill. Following the acquisition, American Paper provided Clearwater with the services it previously provided IP and GPI, and Clearwater accepted those services. Id. ¶ 39.

On May 24, 2024, Plaintiff wrote an email to Defendant to address the ongoing terms of their sales representation relationship with MM Packaging following GPI's transition to Clearwater. Id. ¶ 39. On June 6, 2024, Defendant replied that they were "continuing to work [through] the processes in place" that needed to be addressed at the Augusta Mill since the Clearwater acquisition, one of which was sales agents and commissions. Id. ¶ 42.

However, on August 20, 2024, Plaintiff wrote to Defendant again after learning that Clearwater representatives were visiting MM Packaging's Puerto Rico facilities without extending an invitation to American Paper. Id. ¶ 43. On August 21, 2024, Defendant replied and terminated American Paper's exclusive sales representation rights over products sold to MM Packaging. Id. ¶ 44. Clearwater stated that they terminated the agreement because of their pre-existing relationship with MM Packaging for the sale of other paper products which does not utilize third party sales agents. Id. ¶ 47.

Plaintiff expressed its dissent to the termination and later presented Clearwater with an extrajudicial claim. Clearwater never responded and thus Plaintiff initiated the present action.

## II. APPLICABLE LAW

### A. Motion to Dismiss Standard:

When ruling on a Rule 12(b)(6) motion, "[t]he sole inquiry . . . is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011). The Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted). Then, the Court takes "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." Id. (citations omitted).

### B. Law 21 – Puerto Rico Sales Representative Act:

The Puerto Rico legislature enacted Law 21 in 1990 "to protect sales representatives from the unjust termination of their contracts." IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 445 (1st Cir. 2010). The statute provides that "no principal or grantor may terminate [their principal-sales representative] relationship,

or directly or indirectly perform any act that may impair the established relationship, or refuse to renew [their] contract upon its regular termination, except for just cause." P.R. Laws Ann. tit. 10, § 279a. If the principal terminates or impairs the sales representation contract without just cause, it is liable for damages pursuant to a set of criteria set forth in the statute. Id. § 279c. Additionally, "Law 21 provides a sales representative with a provisional remedy pending litigation to continue in all its terms the relation established by the sales representative agreement and/or to enjoin the principal from making any act or omission in prejudice thereof." Rotger v. Micro-Vu Corp., 2010 WL 11545644, at *5 (D.P.R. 2010) (citing, *inter alia*, P.R. Laws Ann. tit. 10, § 279e).

The statute defines a sales representative as "[a]n independent entrepreneur who establishes a sales representation contract of an exclusive nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico." P.R. Laws Ann. tit. 10, § 279(a). The Supreme Court of Puerto Rico has further clarified that a sales representative is:

> [A] business intermediary who: (1) exclusively promotes and processes contracts on behalf of a principal in an ongoing, stable manner; (2) operates in a defined territory or market; (3) is responsible for creating or expanding the market for the principal's products through promotional efforts; (4) receives commissions

>    for his services or a pay previously agreed upon by the parties; and (5) operates as an independent merchant.

IOM Corp., 627 F.3d at 446 (citing Cruz-Marcano v. Sánchez-Tarazona, 172 D.P.R. 526 (2007)). A sales representation contract is defined as:

>    The agreement established between a sales representative and a principal, through which, and regardless of the way in which the parties establish, delineate or formalize said agreement, the party of the first part commits himself to making a reasonable effort and due diligence in the creation or expansion of a market which is favorable for the products that the principal sells, directed at capturing clientele to offer it a product or service marketed by him in Puerto Rico, and the party of the second part is bound to comply with the commitments that may result from the sales representative's efforts and coordination and to pay the previously-accorded commission or remuneration.

P.R. Laws Ann. tit. 10, § 279(c). Further, while Law 21 does not define exclusivity, the First Circuit, citing the Supreme Court of Puerto Rico, has stated that "[t]he exclusivity requirement is met where neither the principal merchant nor third parties are allowed to sell the product in the same territory or market in which the sales representative operates." IOM Corp., 627 F.3d at 448 (citing Cruz-Marcano v. Sánchez-Tarazona, 172 D.P.R. 526 (2007)).

### III. DISCUSSION

**A. Plaintiff Fails to Plausibly Plead a Law 21 Claim:**

In the *Second Amended Complaint*, Plaintiff seeks relief

pursuant to Law 21. (Docket No. 19). However, for the reasons addressed below, the *Second Amended Complaint* does not state a plausible Law 21 claim. Thus, Plaintiff's Law 21 claim must be **DISMISSED**.

> 1. Plaintiff Fails to Plausibly Plead That They Were Defendant's *Exclusive* Sales Representatives

Plaintiff fails to plausibly plead that they were IP's, or its successors in interest, *exclusive* sales representatives. As noted above, Law 21 only protects sales representatives who exclusively promote and process contracts on behalf of a principal. (*See supra* § II.B). Exclusivity in this context means that "neither the principal merchant nor third parties are allowed to sell the product in the same territory or market in which the sales representative operates." IOM Corp., 627 F.3d at 448 (citation omitted). As the First Circuit has noted, "[e]xclusivity is generally apparent either from the contract or from the arrangements agreed upon between the parties." Id. (internal quotation marks and citations omitted). A plaintiff seeking relief pursuant to Law 21 must do more than merely mention "the exclusivity requirement in a conclusory and casual fashion." Id. at 448-49. Here, Plaintiff fails to provide any substantive factual allegations to adequately plead exclusivity through a contract or through a course of dealing with IP or its successors.

### i. Exclusivity By Contract

First, Plaintiff does not allege that any written agreement exists whereby IP or its successors expressly made American Paper the exclusive sales representative for the SBS products in the Puerto Rico market. Instead, they assert that their relationship with IP or its successors was governed by a 2009 verbal agreement, amended verbally in 2011, and then state in conclusory fashion that they were the exclusive sales representatives for IP's SBS products in Puerto Rico (Docket No. 19 ¶ 8). Plaintiff did not attach any communications or other evidence that show exclusivity was within the terms of the verbal agreement. The Court cannot infer from these allegations that Plaintiff contracted for the express right to be IP or its successors' exclusive sales representative on the island. Therefore, exclusivity is not apparent from the parties' verbal contract. *See* IOM Corp., 627 F.3d at 448.

### ii. Exclusivity By Course of Dealing

Second, the *Second Amended Complaint* does not plausibly allege that there was exclusivity through any "arrangements agreed upon between the parties." Id. Instead, Plaintiff merely alleges that, since 2009, they were IP or its successors' *only* sales representative for SBS products in Puerto Rico. This is an important distinction, as "there is a difference between being the *only* sales representative selling certain products in one entire

market without an intention for exclusivity, and being the *exclusive* sales representative of those same products in that same market." Valentin v. White Rose, Inc., 993 F. Supp. 2d 77, 86 (D.P.R. 2014) (emphasis added). To survive a motion to dismiss, a plaintiff must do more than allege they were the defendant's only sales representative over a period of time. A complaint must contain factual allegations that plausibly assert an intentionally exclusive course of dealing. *See* id. ("[T]he fact that Plaintiff may have been Defendant's only sales representative from 1998 to 2011 does not necessarily render him Defendant's exclusive sales representative without factual allegations that would meet the plausibility requirement for the exclusivity element of a Law 21 cause of action."). Here, the *Second Amended Complaint* does not mention any discussions between Plaintiff and Defendant regarding exclusivity or any instances where a third-party sales representative attempted to enter the market and the parties rebuffed them. Without such factual allegations, the Court cannot infer exclusivity through a course of dealing.

Additionally, the Court cannot infer exclusivity simply from the fact that IP or its successors paid sales commissions to Plaintiff. The First Circuit has found that even the payment of an override commission on all direct sales by a principal does not render an agreement exclusive absent additional factual allegations concerning exclusivity. *See* Med. Books In Print, Inc.

v. Harcourt, Inc., 93 F. App'x 240, 241 n.1 (1st Cir. 2004). "The essence of a non-exclusive agreement is that the [principal] retains the right to sell its wares to others, including other [representatives], as it sees fit." Id. Allegations concerning commission payments do not, on their own, help the Court discern whether IP or its successors retained the right to sell its wares to others in Puerto Rico.

In summary, the *Second Amended Complaint* cannot survive the pending *Motion* because it does not adequately allege that Plaintiff was the exclusive sales representative for IP or its successors in Puerto Rico, either through the express terms of a contract or through an arrangement agreed upon between the parties. Plaintiff's allegations that they were the only sales representative during the relevant period or that they were paid sales commissions are insufficient to state a plausible Law 21 claim.

### B. Plaintiff's Breach of Duty and Good Faith Dealing Claim Must Be Dismissed:

Having disposed of Plaintiff's Law 21 claim, the Court turns to Plaintiff's alternate breach of duty of good faith and fair dealing. Plaintiff alleges that they suffered damages because of Clearwater's intentional failure "to honor the contract's agreed purpose and American Paper's reasonable expectations." (Docket No. 19 ¶ 71).

"When, as now, a duty of good faith and fair dealing is alleged to arise from a contractual relationship, a claim for breach of that duty sounds in contract rather than in tort." Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 10 (1st Cir. 1994). "This, in turn, dictates choice of law: the same substantive law that governs the contract claim also governs the implied covenant claim." Id. Under Puerto Rico law, in the absence of the protection of a particular law such as Law 21, a contract without a fixed term is terminable at will. Ramos v. Willert Home Prods., Inc., 651 F. Supp. 3d 500 (D.P.R. 2023); *see also*, *e.g.*, Distribuidora VW, Inc. v. Old Fashioned Foods, Inc., 84 F. Supp. 3d 82, 89-90 (D.P.R. 2014); Quality Const. Chemicals, Corp. v. Sika Corp., 389 F. Supp. 2d 246, 252 (D.P.R. 2005).

Plaintiff neither pleads a fixed term of duration in the *Second Amended Complaint* nor insinuates in their briefs that their contract with IP or its successors had a fixed term. (Docket Nos. 20 at 16-18; 26 at 7; 30). Plaintiff cannot use an implied covenant of breach of duty and good faith dealing to skirt Law 21's requirements.  In the absence of a valid Law 21 claim or a fixed contract term, the breach of duty and good faith dealing claim must be **DISMISSED**.

### IV. CONCLUSION

For the foregoing reasons, the *Motion* is **GRANTED**, and the *Second Amended Complaint* is **DISMISSED WITH PREJUDICE** in its

entirety. Plaintiff fails to plausibly plead that they were Defendant's exclusive sales representatives or that Defendant was IP's successor in interest. Additionally, Plaintiff's breach of duty and fair dealing claim is insufficient and improper. Judgment of dismissal shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of December 2025.

<u>S/RAÚL M. ARIAS-MARXUACH</u>
UNITED STATES DISTRICT JUDGE